Roderick A. DeARMENT, Acting Secretary of Labor, United States Department of Labor, Appellee,

v.

D.L. HARVEY; Rose City Pentecostal Church of God, Appellants.

No. 90–2346.

United States Court of Appeals, Eighth Circuit.

Submitted April 8, 1991.

Decided May 3, 1991.

Terry Hamilton, Conneaut, Ohio, for appellants.

* The Honorable Daniel M. Friedman, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

Anne Fugett, Dept. of Labor, Washington, D.C., for appellee.

Before LAY, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

D.L. Harvey and Rose City Pentecostal Church of God ("church") appeal the district court's judgment in the Secretary of Labor's action to enforce the Fair Labor Standards Act ("FLSA")[1] against a church-affiliated school, the Rose City Christian Academy. The district court found that lay employees at the school were not being paid the minimum wage and that the church did not comply with the record-keeping requirements of the FLSA. The court awarded back pay and enjoined the church from further violating the FLSA. On appeal, the church contends that church schools are not covered by the FLSA and that application of the FLSA violates the free exercise and establishment clauses of the first amendment. We affirm the judgment of the district court.

BACKGROUND

D.L. Harvey is the pastor of the Rose City church. The church, located in North Little Rock, Arkansas, operates Rose City Academy as an integral part of the church. The school, which provides education for students in grades kindergarten through twelfth grade, is not accredited by the State of Arkansas or any academic body. The Academy charges students $900 tuition for the ten month school term. Students use a self-study program that teaches all subjects from a biblical point of view. Each class has a supervisor who is assisted by a classroom monitor. Both work with the children but do not conduct formal classroom instruction. Supervisors grade papers, answer students' questions, conduct prayer and counsel the students. Monitors perform duties equivalent to

1. 29 U.S.C. §§ 201–209 (1988).

teachers' aides in the public schools. Pastor Harvey testified that each supervisor and monitor must be a "born again" Christian and all monitors and supervisors who testified stated that they consider their teaching part of their personal ministry. Supervisors receive $125 a week and monitors $100 a week in salary.

The Secretary instituted this action to enjoin defendants from violating §§ 6, 11(c), 15(a)(2), and 15(a)(5) of the FLSA. The Secretary also sought back wages for eighteen current and former employees who worked in the church school's classrooms as monitors and supervisors over the past two years. Relying on *Dole v. Shenandoah Baptist Church,* 899 F.2d 1389 (4th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990), the district court held that the FLSA applies to employees of the Academy and that the free exercise and establishment clauses did not bar enforcement of its provisions against the church. The court found the church, as an employer within the meaning of section 3(d) of the FLSA, had violated the minimum wage and record-keeping provisions of the FLSA for the monitors and supervisors employed at the Academy.[2] The court ordered the church to pay the Secretary $22,801.56 together with prejudgment interest to be distributed to present and former supervisors and monitors as back wages in accordance with 29 U.S.C. § 216(c) (1988).

## ANALYSIS

The parties agree that the Fourth Circuit's decision in *Shenandoah Baptist Church* is directly on point and addresses the same issues raised in this case. The church urges this circuit to hold that *Shenandoah* was incorrectly decided and should not be followed. The Fourth Circuit held that Congress intended the FLSA to apply to church-run schools, which are "enterprises" within the meaning of the FLSA. *Shenandoah,* 899 F.2d at 1395. The *Shenandoah* court also found that any minimal free exercise burden was justified by the compelling governmental interest in enforcing the minimum wage and equal pay provisions of the FLSA. *Id.* at 1398. The court also held that the establishment clause of the first amendment was not violated because of excessive entanglement. *Id.* at 1399. Finally, the court held that the establishment clause was not violated simply because the FLSA created an exemption for Catholic nuns and priests because the exemption was non-denominational and included ministers, priests, and deacons of all faiths. *Shenandoah,* 899 F.2d at 1399.[3]

We agree with the parties that *Shenandoah* is directly on point. We find the decision persuasive. The church has raised the same arguments rejected by the Fourth Circuit.[4] We agree with the well-reasoned opinion in *Shenandoah* and believe it properly applies the governing law.

The judgment of the district court is affirmed. *See* 8th Cir.R. 47B.

---

**2.** The district court found that the church did not maintain records covering the daily and weekly hours worked by the supervisors and monitors. Based on the testimony of the employees, the court concluded that supervisors and monitors worked a 38 hour week. The court then calculated that supervisors were receiving $3.29 an hour and monitors $2.63 an hour in wages. At the time of the payments, the statutory minimum wage was $3.35 per hour.

**3.** Department of Labor Guidelines, following the intent of Congress, created this so-called ministerial exemption to lessen any danger of excessive governmental entanglement with pure religious functions. *Field Operations Handbook,* Wage and Hour Division, U.S. Dep't of Labor

§ 10b03(b) (1967); *see Shenandoah,* 899 F.2d at 1396. The *Shenandoah* court also held that creation of the ministerial exemption did not violate the equal protection clause. *Id.* at 1400.

**4.** In addition, the church also challenges the district court's refusal to allow the church to amend its complaint to allege an equal protection claim. Considering the untimeliness of the motion to amend, the district court did not abuse its discretion in denying leave to amend.

In stating that the church raises the same arguments, we do not mean to imply that the arguments are in any way frivolous. The church's position has been well argued in both the briefs and in oral argument.